UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES )<br>)<br>v.                                       )<br>)<br>GEOFFREY PORTWAY         )<br>) | CRIMINAL NO. 4:12CR40064-1 |

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the Defendant, Geoffrey Portway, and respectfully submits this Sentencing Memorandum to provide information to the Court to be used in imposing a sentence "sufficient but not greater than necessary" to achieve the purposes of punishment required by Title 18 of the United States Code, specifically §3553.

On May 6, 2013, the Defendant pled guilty to three counts: Count 1: Solicitation to Commit a Crime of Violence in violation of 18 U.S.C. § 373, Count 2: Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and Count 3: Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). For the reasons set forth below, the Defendant requests that this Honorable Court impose a sentence of 216 months imprisonment in accordance with the Plea Agreement (or at maximum that this Court impose the Guideline Sentence of 262 months) and a lifetime term of supervised release. The Defendant also requests that he only be ordered to pay the mandatory special assessment of $300.00 (Three Hundred Dollars) and no other fines. The Defendant further requests that he be ordered to pay restitution in the amount of $10,000.00 (Ten Thousand Dollars) as was previously negotiated by Defendant's counsel with counsel for the victims submitting requests for restitution. The Defendant requests that no other restitution be ordered.

1

I.   **Introduction**

The function of the sentencing Judge in a criminal case was laid down by the Supreme Court in *United States v. Koon*, 518 U.S. 81 (1996), in which the Court stated that it has been historically proper for a "sentencing judge to consider every convicted person as an individual in every case" with mitigating and aggravating factors. 518 U.S. at 113.

The Supreme Court once again stated emphatically in 2005 that the Judge must consider the aggravating and mitigating factors of every case as paramount factors in the sentencing of the individual, when it struck down the United States Federal Sentencing Guidelines' mandatory provision as unconstitutional. *See Booker supra. Booker* once again required that judges cast aside the Sentencing Guidelines when the interests of justice would not be served by imposing the sentence required under the Guidelines, and restores the independence of the District Court judges. Furthermore, 18 U.S.C. §3553(a) specifically instructs that a Judge shall not impose a sentence that is greater than necessary to achieve the stated purposes of the statute. The purposes of the statute are: 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the Defendant; and 4) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See Booker*, 543 U.S. at 765.

*Booker* made it clear, however, that the Sentencing Guidelines are advisory, and while they provide substantial weight, they are not to control the sentence when there are clearly identified factors or reasons for the Court to fashion an appropriate sentence outside of the Guidelines. *United States v. Jiminez-Beltre*, 440 F.3d 514 (1st Cir. *En banc* 2006). *Booker* "makes it possible for courts to impose non-guidelines sentences that override the guidelines,

2

subject only to the ultimate requirement of reasonableness." *Id.* at 518. In the present case, it is reasonable for the Court to impose a sentence below the advisory Guideline sentencing range as contemplated by the Plea Agreement in this case.

In sentencing the Defendant, the Court should proceed according to the three-step sequence endorsed by the First Circuit in *Jiminez-Beltre* at 518-519: 1) It must first determine the applicable Guideline sentencing range; 2) It must then consider and either accept or reject any proposed departures from that range; and 3) It must determine "whether other factors identified by either side warrant an ultimate sentence above or below the guideline range."

## II. The Guideline Sentencing Range

### A. Term of Imprisonment

The Defendant agrees with the Presentence Investigation Report that the Defendant's total offense level after adjustments and acceptance of responsibility is 39. The enhancements and adjustments are in accordance with the Plea Agreement. The Defendant also has no previous criminal history. Based on the total offense level of 39 and the criminal history category of I, the Sentencing Guideline range provides for a sentence imposition of 262 to 327 months imprisonment. The Defendant requests, however, that the Court, impose a sentence of 216 months imprisonment in accordance with the Plea Agreement or at maximum that this Court impose the Guideline of 262 months because no person was physically touched or photographed by the Defendant.

On July 12, 2013, the Defendant filed an Amended Letter of Objections with the Probation Office and the Defendant wants to reiterate one of those objections in this Sentencing Memorandum. The Defendant objects to the sentence in Paragraph 14 of the Pretrial Investigation Report that "Portway distributed child pornography images for the receipt or

expectation of receipt of a thing of value, namely to obtain other child pornography from the individual to which Portway was distributing child pornography." My client wants me to point out that while he did not expect to receive images of child pornography in exchange for any images, however, he agrees that he knew that upon distribution, he may receive images and regularly did receive images of child pornography. That being said, the Defendant still agrees that the level 5 enhancement assessed in Paragraph 25 does apply to him in this case under USSG § 2G2.2(b)(3)(B).

Accordingly, the Defendant requests he be sentenced in accordance with the Plea Agreement with the United States Attorney to 216 months imprisonment based on the nature and circumstances of the offense, the history and characteristics of the Defendant, the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, and the inequities of § 2G2.2 as set forth below.

B. Fines and Restitution

The Defendant requests that he be required to pay the $300.00 ($100.00 for each count) mandatory special assessment fine under 18 U.S.C. § 2013. The Defendant requests that no additional fines be imposed since the Defendant has limited resources and those financial resources should be used to pay restitution to the victims. 18 U.S.C. § 373 provides the maximum fine is $125,000.00. 18 U.S.C. § 3571(b)(3) provides that an individual who has been found guilty of a felony may be fined not more than $250,000 and § 5E1.2 of the Sentencing Guidelines provides that the fine range for an offense level of 38 and above is $25,000-$250,000.00. § 5E1.2(a) also provides that "the court shall impose a fine in all cases, except where the Defendant establishes that he is unable to pay and is not likely to become able to pay any fine." In this case, the Defendant has very limited resources and is not able to pay any fines

4

now or in the future. He has however set aside money, other than legal fees, for the specific purpose of providing restitution to the victims which has been agreed upon at this time.

Several victims in this case have requested restitution. The Defendant requests that his limited financial resources be used to pay restitution to the victims instead of paying a fine. Defendant's counsel has been in contact with counsel for the victims who have submitted a request for restitution. The Defendant requests this Court order the Defendant to pay restitution in the amount negotiated between the parties, namely $2,000.00 (Two Thousand Dollars) per victim for a total of $10,000.00 (Ten Thousand Dollars). The Defendant notes that at the time of sentencing no other victims have come forth as required and therefore the Defendant requests that the Court make this a final restitution figure.

Based on the Plea Agreement, and the offenses the Defendant has been convicted of, the Defendant will be incarcerated for at least eighteen years and possibly up to twenty-seven years and three months. Upon his release, the Defendant will be at least 58 years old and could be as old as 67 years old. Upon the Defendant's release from custody, he will be required to register as a sex offender and will be deported. As a result, the Defendant's employment options, if any, will be significantly limited and restricted. With his criminal record and his vocational and educational training it is highly unlikely the Defendant will be able to find employment earning anywhere close to the amount he earned prior to his arrest if he is even able to find employment. The stigma associated with being a registered sex offender as well as the negative publicity received in this case will also severely limit the places he is allowed to work.

Based on the foregoing, the Defendant asks this Court to forego imposing a fine above the $300.00 mandatory special assessment and that the Court order the Defendant to pay restitution based on defense counsel's negotiated agreement. The Defendant further requests that

should any additional victims make claims for restitution that such claims be denied or in the alternative that he be allowed to supplement this response.

### III.  Inequities of §2G2.2

The Defendant recognizes that his total offense level is based not only on § 2G2.2 but also on § 2X1.1(a) since the Defendant also plead guilty to Solicitation to Commit a Crime of Violence. That being said, the Defendant feels it is important to point out that the Circuit Courts including the First Circuit have recognized the inequities in sentencing caused by § 2G2.2. The Defendant, in this case, maintains that the inequities of § 2G2.2 have resulted in an advisory sentence that is greater than necessary to achieve the purposes of punishment. "Judges and commentators have challenged the inequities of the child pornography Guidelines. Some have categorically rejected § 2G2.2 on policy grounds." *United States v. Cruikshank*, 667 F.Supp.2d 697, 702 (2009).  "Section 2G2.2- the child pornography guideline- is not entitled to the usual deference due the Guidelines." *Id*. The Supreme Court has recognized that Guidelines based on statutory directive like § 2G2.2 as opposed to careful study based on empirical evidence "do not exemplify the Commission's exercise of its characteristic role." *Id*. (citation omitted). "Because of the inequities presented by §2G2.2, a number of courts have imposed below-Guidelines sentences even in mine-run cases. Between July 1, 2009 and September 30, 2009, district courts imposed within-Guidelines sentences under §2G2.2 in only 44.6% of cases, compared to the overall average of 55.2%." *Id*. at 701.

Furthermore, "the judicial disquiet with the Guidelines for child pornography offenses is commonly based on the conclusion that U.S.S.G. § 2G2.2 was not developed pursuant to the Sentencing Commission's characteristic institutional role." *United States v. Grober,* 624 F.3d

6

592, 608–09 (3d Cir. 2010). The Commission exercises its characteristic institutional role when it develops its guideline provisions from "empirical data and national experience, guided by professional staff with appropriate expertise." *Id.* at 608. But with § 2G2.2, the Commission did not use this empirical approach and instead, in response to congressional directives, it "cobbled together [sentencing enhancements] through this process [that] routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *United States v. Dorvee,* 616 F.3d 616 F.3d 174, 186 (2d Cir. 2010).

"By concentrating all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the Defendant' and violates the principle, reinforced in *Gall*, that courts must guard against unwarranted similarities among sentences for Defendants who have been found guilty of dissimilar conduct." *Id.* at 187. This is exactly what has happened to the Defendant under the Sentencing Guidelines in this case. After the sentencing enhancements and adjustments were applied which included a three level downward departure for Acceptance of Responsibility, the Guidelines projected sentence of the Defendant is "greater than necessary" to achieve the purposes of punishment required by Title 18 of the United States Code.

Many of the § 2G2.2 enhancements apply in nearly all cases. *Id.* at 186 (noting that, of all the § 2G2.2 sentences imposed in 2009, 94.8% involved an image of a prepubescent minor, 97.2% involved a computer, 73.4% involved an image of sadistic, masochistic, or otherwise violent conduct, and 63.1% involved 600 or more images). "Instead of imposing enhancements for more severe offenses, the § 2G2.2 enhancements apply in nearly every case." *Cruikshank,* 667 F.Supp.2d at 702 (noting "several offense characteristics which are expected to apply in

7

almost every case e.g. use of a computer, material involving children under 12 years of age, number of images). These enhancements that should be applicable to more severe offenses are applicable to almost all offenses within this Guideline.

In the Defendant's case, the enhancements common to all offenses- use of a computer, material involving children under the age 12, distribution for the receipt or expectation or receipt of a thing of value, and the number of images, all contributed to him receiving an excessive sentence under the Guidelines. Further proof of the "irrationality" of § 2G2.2 is cited in *Dorvee*: that a Defendant who actually engages in sexual conduct with a minor may be subject to a lower Guidelines range than one who distributes child pornography. *Grober, 624 F.3d* at 607 (citing *Dorvee, 616 F.3d* at 186). It is important to note, the Defendant <u>never</u> engaged in inappropriate sexual conduct with a minor. There is no evidence that the Defendant ever acted out any of his fantasies.

In *United States v. Stone*, the Court added a coda after affirming the sentence of a Defendant within the applicable Sentencing Guidelines of § 2G2.2. The court stated "sentencing is primarily the prerogative of the district court, and the sentence imposed in this case is within permissible limits . . . That said-and mindful that we have faithfully applied the applicable standards of review-we wish to express our view that the sentencing guidelines at issue are in our judgment harsher than necessary. As described in the body of this opinion, first-offender sentences of this duration are usually reserved for crimes of violence and the like. Were we collectively sitting as the district court, we would have used our *Kimbrough* power to impose a somewhat lower sentence." 575 F.3d 83, 97 (1st Cir. 2009); *United States v. Kimbrough*, 552 U.S. 85, 91 (2007) (holding that a "judge may determine, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing"). The First

8

Circuit recognized that § 2G2.2, the same Guideline applicable to the Defendant in this case, is much harsher than necessary especially for first time offenders.

The Defendant is requesting this Court use its *Kimbrough* power to impose a sentence that is sufficient but not greater than necessary to achieve the purposes of punishment. A sentence of 327 months as proposed by the Government exceeds the objectives of sentencing and is greater than necessary due in part to the inequities inherently present in § 2G2.2. The Defendant's requested sentence of 216 months is consistent with the offense committed, the Defendant's history and characteristics, and the purposes of sentencing.

### IV.     Factors Under 18 U.S.C. §3553 Warranting Departure

A review of the facts of this specific case and the characteristics of the Defendant would justify a downward departure from the Sentencing Guidelines in accordance with the Plea Agreement. In the present case, there are a host of factors which in combination support a sentence of 216 months. *United States v. Thurston,* 544 F.3d 22 (10th Cir. 2008). The Defendant in the present case is a good and decent man, who uncharacteristically committed a serious crime.

18 U.S.C. §3553 requires that a court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The sentencing judge is statutorily prohibited from imposing a sentence on a criminal Defendant that is greater than necessary according to the statute, even when a greater sentence is indicated by the Sentencing Guidelines. *United States v. Denardi*, 892 F.2d 269, 276-277 (3d Cir. 1989). Therefore, the Court must consider the following in sentencing the Defendant.

"The court, in determining the particular sentence to be imposed, shall consider (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the Defendant; and to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of Defendant as set forth in the guidelines ….; (5) any pertinent policy statement issued by the Sentencing Commission …; (6) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a).

Under 18 U.S.C. §3553, the Court shall consider the circumstances of the offense and the characteristics of the Defendant. The characteristics of this Defendant justify a sentence of 216 months.

A. The nature and circumstances of the offense and the history and characteristics of the Defendant.

First and foremost, the Court should consider the Defendant's acceptance of responsibility for his criminal actions. The Defendant admitted to his actions and accepted a Plea Agreement offered by the Government. Equally important, the Defendant also took responsibility for his actions by finding a therapist and seeking mental health counseling. The Defendant began seeing Dr. Eric Brown soon after his arrest. (See Exhibit A for Dr. Brown's Aid-in-Sentencing Evaluation).

During the course of the evaluation, the Defendant discussed his childhood experiences. The Defendant revealed the tumultuous family life he endured as a child. The Defendant moved often with his parents and lived in different countries including Spain, Puerto Rico, Ireland and the United States. Ultimately the Defendant ended up moving to Framingham, MA with his family. The Defendant had difficulty making friends due to his constant moving. The Defendant's parents also had difficulties in their marriage and separated when the Defendant was ten years old. The Defendant rarely saw his father both before and after his parents separated.

The Defendant had further difficulties as a child because he realized at an early age he was gay. The Defendant did not feel accepted by his family, specifically his father, and his peers. The Defendant began to retreat into his own fantasy world. The Defendant also began to desire that he himself be eaten as a small child. As Dr. Brown stated in his report "Mr. Portway's wish to be eaten fulfilled a more basic desire to be wanted, valued, and incorporated by another person." The Defendant has had mental health issues for a significant period of time dating back to middle school when he first received mental health treatment. The Defendant has also tried to commit suicide on at least two occasions.

Also, important to note is the Defendant lived in an active fantasy world. The Defendant would retreat into his world of playing video games, Dungeons and Dragons with friends on Friday evenings, and engaged on numerous occasions in live action role play known as LARPing. The Defendant's activities in chat rooms were just another part of his fantasy role playing. The Defendant never touched a child nor sought to produce any type of child pornography on his own. The Government has presented no evidence beyond the Defendant having an active fantasy world that he would retreat into when dealing with the real world

became too much. The Defendant, however, <u>never</u> acted out any of his so-called "cannibalism" fantasies in real life.

The Government relies heavily on a description of the Defendant's basement when arguing that the Defendant intended to kidnap, rape, and cannibalize a child. The Defendant's basement, referred to as a dungeon by the Government, was not a dungeon but rather was a theater set up by the Defendant for him to use when he role played. The Defendant would lie in both the cage and the box (referred to by the Government as a "coffin") as part of his role playing. Even though the basement was sound proof, the Defendant's intention in sound proofing the room was to ensure that when he was engaged in consensual activities, he would not disturb his neighbors. There was no ulterior motive.

Additionally, Dr. Brown states in his report that the Defendant admitted he was interested in sadomasochistic relationships. The Defendant "stressed [to Dr. Brown] the consensual nature of sadomasochistic activity and underscored the importance of voluntary participation, and the explicit provisions of stopping the bondage activity if it became undesirable or unbearably for one of the parties." (See Exhibit A, Page 4-5). The Defendant insisted to Dr. Brown "that he never intended to kidnap, manipulate or dupe anyone into entering the basement." (See Exhibit A, Page 5). It is important to stress that there is no indication that anybody including any children ever willingly or forcibly entered the Defendant's basement. Rather, the Defendant would use the theater he created in his basement to role play.

Dr. Brown also states in his report that the Defendant "has never displayed any aggressive behavior. He has never committed a violent act. He has never engaged in any other sexual misconduct. He has not demonstrated a range of sexual deviancy. He has never attempted to groom or stalk a child for sexually deviant purposes." (See Exhibit A, Page 6). Again, there is

nothing to indicate the Defendant acted out his fantasies with any person or child in real life or that he even attempted to lure a child into his basement.

The Defendant has no previous criminal history but he does recognize that recidivism in cases such as this is a possibility, but he will take all the necessary steps to minimize such a risk. Dr. Brown states that if the Defendant participates in long term, cognitive behavioral psychotherapy, "his likelihood for recidivism and the danger he poses to the community will both be acceptably low." (See Exhibit A, Page 7-8). The Defendant acknowledges that he committed a serious offense and is by no means attempting to make any excuses for his actions. He is merely trying to explain how the circumstances of his childhood became a catalyst for the crimes he later committed.

> B. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The sentence imposed should not just reflect society's perception of the Defendant. It is easy for the Government and media to get carried away emphasizing the types of chat room conversations the Defendant engaged in because of the salacious notion of cannibalism. Sentencing, however, must be based on the individual's offense and his own characteristics and not based on the vilification of an individual by the media. The Defendant escaped his own reality by having conversations with other individuals online and creating theater in his basement where he can role play his fantasies or meet someone online for consensual sadomasochistic and bondage play. These conversations never left the fantasy world to enter the real world. The items in the Defendant's basement were only used while he was engaged in role play or in acting out his fantasies.

The stiff sentence the Government seeks to impose is not based on the Defendant's actual actions. As stated earlier, the Defendant's real offense is possessing and distributing child

13

pornography and it is the inequities of the Sentencing Guidelines that provides such a lengthy sentence in this case. While the Defendant plead guilty to Solicitation of a Crime of Violence, it is crucial for this Court to know that the Defendant never harmed a child or any other person acting out his fantasies. A just punishment in this case is an imposition of a 216 month sentence.

## V.    Conclusion

Based on all the factors, the Defendant respectfully requests that this Honorable Court impose a sentence of 216 months imprisonment (or at maximum that this Court impose the Guideline Sentence of 262 months), a lifetime term of supervised release, order the Defendant to pay the mandatory special assessment of $300.00 (Three Hundred Dollars), and restitution to the victims in the amount of $10,000.00 (Ten Thousand Dollars) as previously negotiated by Defendant's counsel with the victims' counsel. The Defendant also requests that no additional fines or restitution be imposed.

The Defendant's case warrants this sentence because it is "sufficient but not greater than necessary" to achieve the purposes of punishment required by Title 18 of the United States Code, specifically §3553, in light of the decision set forth in *United States v. Booker*, 543 U.S. 220 (2005).

>                    Respectfully submitted,
>                    Geoffrey Portway,
>                    By his attorney,
>
>                    */s/ Richard Sweeney*
>                    Richard J. Sweeney
>                    Sullivan & Sweeney, LLP
>                    277 Newport Avenue
>                    Quincy, MA 02170
>                    (6170 328-6900
>                    BBO#647615

Dated: September 13, 2013

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the foregoing memorandum has been electronically transmitted to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to Assistant U.S. Attorney Stacey Belf.

                                                     */s/ Richard Sweeney*

Dated: September 13, 2013