IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
GEOFFREY PORTWAY,                       )
                                        )
                                        )
            v.                          )        No. 12-cr-40064-TSH
                                        )
UNITED STATES of AMERICA                )
                                        )
            Defendant                   )
_____)


## MEMORANDUM IN OPPOSITION OF THE UNITED STATES

## I.  INTRODUCTION

Defendant Geoffrey Portway pled guilty to a series of charges stemming from his attempt to have a young boy kidnapped so Portway could sexually abuse and cannibalize him in a special dungeon he had built with elaborate equipment to fulfill his planned crime.  He now seeks to vacate his conviction despite having (i) pled guilty with advice of counsel; (ii) waived his appeal rights generally; and (iii) waived his right to bring a collateral challenge specifically.  For these grounds, and because his petition lacks substantive merit, the petition must be denied.

## II. STATEMENT OF FACTS

Defendant Geoffrey Portway was born in Spain and is a citizen of the United Kingdom. [Presentence Report ("PSR"), ¶ 7]  At all times relevant to this case, Portway was a resident of Worcester, Massachusetts. *Id.*  As part of a long-term international investigation, the Department of Homeland Security and Homeland Security Investigations (HSI), identified the defendant as being a member of certain discussion groups that traded child pornography and that focused upon the kidnap, torture, murder and cannibalization of children.  *Id.*   On July 27, 2012, HSI

1

agents, along with the Massachusetts State Police and the Worcester Police Department, executed a federal search warrant of the defendant's residence in Worcester, Massachusetts. *Id.,* at ¶ 8. Among the items seized were various computers and digital devices which contained child pornography or were used to facilitate the collection and distribution of child pornography. *Id.* Forensic examination uncovered evidence of over 4,500 trades of child pornography between the defendant and others. *Id.* at ¶ 14. During the execution of the search warrant, HSI agents also discovered a sound-proofed dungeon in the basement that contained a chair, television, child-sized coffin, steel cage, and a steel table top with restraint anchor points. *Id.* at ¶ 17. Outside this room were a cabinet freezer, an upright freezer, disposable scalpels, butchering kits, and castration tools. *Id.* The defendant also solicited help from several individuals to abduct a child for the purposes of sexual abuse and cannibalization. *Id.* at ¶ 16. The defendant was arrested on July 27, 2012. *Id.,* (face sheet).

## III. PROCEDURAL HISTORY

Following his arrest on a criminal complaint, the defendant was indicted for distribution of child pornography and possession of child pornography on December 4, 2012. [docket #10] On May 6, 2013, the defendant waived indictment on superseding charges and pled guilty to a Superseding Information. [docket #41] The Superseding Information charged him with Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373, Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). [docket #39] Defendant's plea was entered pursuant to a plea agreement under Fed. R. Crim. P. 11(a)(1)(C), dated September 23, 2014. [docket #42] In accordance with the terms of his plea agreement, defendant was sentenced on September 18,

2013 to 320 months' imprisonment, supervised release for a term of life, restitution in the

amount of $3,000 to each of the 5 victims, and a $300 special assessment. [docket #55 & 56]

On September 19, 2014, the defendant filed his instant petition pursuant to 28 U.S.C §

2255.  [docket #68]

## IV. ARGUMENT

### A.  Portway's Substantive Claim that Congress Lacked the Authority to Enact 18 U.S.C. §  2252 Is Without Merit

#### 1.  Every Court to Consider This Argument Has Found the Statute Constitutional

Virtually every court that has considered whether Congress has the authority pursuant to

the Commerce Clause of the U.S. Constitution to enact 18 U.S.C. §  2252 has reached the same

result:  Congress has such authority because the statute specifically incorporates a case-by-case

test for establishing impact on interstate commerce.  *See, e.g., United States v. Robinson*, 137

F.3d 652 (1st Cir. 1998); *U.S. v. Galo*, 239 F.3d 572 (3d Cir. 2001);  *United States v. Corp*, 236

F.3d 325, 332 (6th Cir. 2001); *U.S. v. Halter,* 259 Fed.Appx. 738 (6th Cir. 2008); *United States v.*

*Angle*, 234 F.3d 326 (7th Cir. 2000); *United States v. Bausch*, 140 F.3d 739, 741 (8th Cir. 1998),

*cert denied*, 119 S.Ct. 806 (1999); *United States v. Hampton*, 260 F.3d 832, 834–35 (8th Cir.

2001) (following *Bausch's* rationale); *United States v. Hoggard*, 254 F.3d 744, 746 (8th Cir.

2001) (same); *U.S. v. Adams,* 343 F.3d 1024 (9th Cir. 2003); *United States v. McCalla*, 545 F.3d

750, 753 (9th Cir. 2008); *United States v. Winningham*, 953 F.Supp. 1068, 1074 (D.Minn.1996).

As stated in *Bausch*, "[t]he statute contains an express jurisdictional element requiring the

transport in interstate or foreign commerce of the visual depictions or the materials used to

produce them, [therefore] the statute ensures, through a case-by-case inquiry, that defendant's

pornography possession affected interstate commerce." *Id.*  In the same vein, the First Circuit in

*Robinson* stated:

> We find § 2252(a)(4)(B)… to be a proper exercise of Congress's
> power under the Commerce Clause. Congress enacted § 2252
> based, in large part, upon its finding that child pornography and
> child prostitution have become highly organized, multimillion
> dollar industries that operate on a nationwide scale, and that such
> prostitution and the sale and distribution of such pornographic
> materials are carried on to a substantial extent through mails and
> other instrumentalities of interstate and foreign commerce.

*Id.,* at 656 (internal quotation marks omitted).

## 2.  Commerce Clause Generally

Under the Commerce Clause, Congress "shall have power…  to regulate Commerce with

foreign Nations, and among the several States, and with the Indian Tribes." U.S.C.A. Const. Art.

1, § 8, cl. 3.  In *U.S. v. Morrison*, 529 U.S. 598 (2000), the Supreme Court set out four factors to

determine whether a statute regulates an activity that has a substantial effect on interstate

commerce:

(1)  whether the statute regulates economic or commercial activity;

(2)  whether the statute contains an express jurisdictional element that limits the
reach of its provisions;

(3)  whether Congress made findings regarding the regulated activity's impact on
interstate commerce; and

(4)  whether the link between [the regulated activity] and a substantial effect on
interstate commerce was attenuated.

*Accord U.S. v. Morales-de Jesus* 372 F.3d 6, 10 (1st Cir. 2004).

In *U.S. v. Lopez*, 514 U.S. 549 (1995), and  *Morrison,* the Supreme Court

indicated that not all exercises of purported Commerce Clause power would pass

constitutional scrutiny.  In *Lopez*, the Supreme Court struck down the Gun-Free School

Zones Act of 1990 (GFSZA), which prohibited knowingly possessing a firearm within 1000 feet of a school. *Lopez*, 514 U.S. at 549. Since the GFSZA did not directly regulate the channels or instrumentalities of interstate commerce, the Supreme Court analyzed the statute for its control of activities that affect interstate commerce. *Id.* at 559. The Court found the statute unconstitutional because "by its terms [it had] nothing to do with 'commerce' or any sort of economic enterprise," and the statute lacked a jurisdictional element that would "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* Lastly, the court was left in want of congressional findings about the legislative purpose and judgment of the activity in question. *Id.* at 561. Although not required at the time, the Court stated that such findings would have been helpful in its analysis. *Id.* at 561.

Five years later, the Supreme Court revisited *Lopez* and the Commerce Clause in *Morrison*, where the court evaluated a federal civil remedy for victims of gender-based violence under the Violence Against Women Act of 1992 ("VAWA"). *Morrison*, 529 U.S. at 600. Referencing its reasoning in *Lopez*, the Court similarly analyzed the VAWA for impact on interstate commerce, and it established the four factor test set out above to determine whether a statute regulates an activity that has a substantial effect on interstate commerce. *Id.* The Supreme Court held that the VAWA statute was unconstitutional because "gender-motivated crimes of violence are not, in any sense of the phrase, economic activity," and the statute lacked a jurisdictional element establishing that an impact on interstate commerce. *Id.* Moreover, the Court reasoned that, although the VAWA statute was supported with congressional findings, unlike the statute in *Lopez*, regarding the serious impact of gender-motivated violence on victims and their families,

these findings were weakened because they relied on reasoning that the Supreme Court

had rejected, "a but-for causal chain from the initial occurrence of violent crime to every

attenuated effect upon interstate commerce." *Id.* at 599.  Lastly, the Court found that the

link between interstate commerce and the regulated activity was too attenuated.  *Id.* at

615.

Because *Robinson,* the First Circuit case cited above upholding 18 U.S.C. §  2252,

predates *Lopez*  and *Morrison*, it is worthwhile examining the nexus of the conduct

proscribed by 18 U.S.C § 2252 to interstate commerce under the analytical framework of

those cases.

### 3.  18 U.S.C § 2252 is within the bounds of Congress' authority under the Commerce Clause because the statute satisfies the *Morrison* test.

18 U.S.C § 2252 regulates child pornography, which, as noted in congressional and

senate hearings, is a multimillion dollar industry with extensive economic activity in production,

distribution, website subscription, and other activity of a commercial nature. S. Rep. No. 95-438,

at 3-5 (1978). The First Circuit in *Morales-de Jesus* found that there are large markets for child

pornography, in contrast to the activities in *Morrison* (engaging in gender-violence) and *Lopez*

(having a firearm in a school zone).  These latter two activities do not directly involve goods or

services that can be bought or sold, nor is there a market for these activities.  *Morales-de Jesus*,

372 F.3d at 12.

The First Circuit noted that Congress enacted § 2252 based upon its findings that 'child

pornography and child prostitution have become highly organized, multimillion dollar industries

that operate on a nationwide scale,' and 'that such prostitution and the sale and distribution of

such pornographic materials are carried on to a substantial extent through mails and other

instrumentalities of interstate and foreign commerce.'  *Robinson,* at 656 .  Therefore, due to its

commercial and economic nature, child pornography is an economic activity, thus satisfying the first requirement of the *Morrison* test.

The defendant in the present case was convicted under § 2252(a)(2) and (a)(4)(B), both of which have jurisdictional elements that ensure case-by-case inquiry, and therefore satisfy the second requirement of the *Morrison* test.  Each subsection of the statute contains the requirement that the visual depictions or the materials used to create such depictions, be "mailed, . . . shipped or transported in interstate or foreign commerce . . . ."  *See generally Robinson*, 137 F.3d at 655-56 (1st Cir. 1998).  The transport of images or videos via the internet, which travels through various servers that are located in different states, is considered interstate commerce.  *See*, *e.g.*, *U.S. v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002).

Regarding the third portion of the *Morrison* test, Congress has provided legislative findings for § 2252 indicating that distribution and possession of child pornography does in fact affect interstate commerce, as opposed to *Morrison* itself*,* where the Court found that the congressional findings did not demonstrate any effect on interstate commerce.

In *Morales-de Jesus*, the First Circuit found that Congress amended 18 U.S.C. § 2252 to include the current jurisdictional element for two reasons: "First, it wanted the new jurisdictional element of the production statute to mirror the existing jurisdictional element of the possession statutes. *Morales-de Jesus* 372 F.3d at 11-12 (*citing* H.R. Rep. 105–557, at 26–27 (1998), *reprinted in* 1998 U.S.C.C.A.N. 678, 695).  Second, Congress was concerned about federal law enforcement's current inability to prosecute "a number of cases where the defendant produced the child pornography, but did not intend to transport the images in interstate commerce." *Id.* (*citing* H.R. Rep. 105–557, at 27 (1998), *reprinted in* 1998 U.S.C.C.A.N. 678, 695).  Moreover, the First Circuit noted that Congress found that:

> [T]he existence of a traffic in child pornographic images ...
> inflames the desires of child molesters, pedophiles, and child
> pornographers who prey on children, thereby increasing the
> creation and distribution of child pornography....[and that]
> "prohibiting the possession and viewing of child pornography will
> encourage the possessors of such material to rid themselves of or
> destroy the material, thereby helping ... to eliminate the market for
> the sexual exploitative use of children.

*Morales-de Jesus* 372 F.3d at 11 (*citing* Consolidated Appropriations Acts, 1997, PL 104–208,

September 30, 1996, 110 Stat 3009).

Lastly, the link between child pornography, possession and distribution, and its effect on

interstate commerce is not attenuated.  There is a substantial link between the possession and

distribution of child pornography and its effect on the child pornography industry.  In *Robinson,*

the First Circuit upheld the constitutionality of § 2252(a)(4)(B) because the local possession of

child pornography " 'through repetition elsewhere' helps to create and sustain a market for

sexually explicit materials depicting minors." *Robinson,* 137 F.3d at 656 (quoting *Lopez,* 514

U.S. at 567).  *Robinson* held that "[b]y outlawing purely intrastate possession of child

pornography ..., Congress can curb the nationwide demand for these materials." *Id.*

Therefore, because it satisfies each of the *Morrison* factors, § 2252 is within the bounds

of Congress' authority under the Commerce Clause.

**B.  The Defendant Waived His Right to Appeal or Bring
     Collateral Motions**

In *Tollet v. Henderson*, 411 U.S. 258, 267, the Supreme Court explained that, "when a

criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense

with which he is charged, he may not thereafter raise independent claims relating to the

deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  If a

defendant fails to reserve issues for appeal, the guilty plea waives any subsequent challenge to

the prosecution that does not pertain to the fundamental question of the court's jurisdiction. *U.S. v. Gonzalez*, 311 F.3d 440 (1st Cir. 2002), *see also U.S. v. Cordero*, 42 F.3d 697, 699 (1st Cir. 1994).

The defendant in the present case waived his rights to appeal and to bring motions under § 2255 in his plea agreement:

> Defendant has conferred with his attorney and understands that he has the right to challenge his convictions in the United States Court of Appeals for the First Circuit ("direct appeal"). Defendant also understands that he may, in some circumstances, be able to challenge his conviction in a future (collateral) proceeding, such as pursuant to a motion under 28 U.S.C. § 2255, 28 U.S.C. § 2241 or18 U.S.C. §3582. Defendant waives any right he has to challenge his conviction on direct appeal or in any future proceeding.

Plea Agreement, ¶ 10.[1] This Court conducted a careful and thorough Rule 11 hearing on May, 6, 2014, where defendant indicated he understood all of the rights he was foregoing by way of a guilty plea, that he understood the charges to which he was pleading guilty and the agreed-upon sentence as set out in the plea agreement.

The Supreme Court has long held that plea bargains are generally not reviewable under a collateral attack—"a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). See also *Wilkins v. U.S.*, 754 F.3d 24, 28 (1st Cir. 2014) (quoting *Mabry*, 467 U.S. at 508).[2]

---

[1] Criminal defendants may waive their rights, as long as they do so voluntarily and with knowledge of the general nature and consequences of the waiver. *U.S. v. Teeter*, 257 F.3d 14, 21 (1st Cir. 2001).

[2] The only argument that the defendant had available to him for a § 2255 collateral attack was that of ineffective counsel, but he did not raise that argument and has now forfeited that claim.

And this is how it must be.  A defendant cannot sit on his hands, foregoing a motion to dismiss the indictment within the timeframe set by the court, indicate his willingness to change his plea, put off the elaborate preparations that a trial entails, only to later say, "I did not mean it."  This would be inefficient and unfair to the government, witnesses and victims.  The defendant in the present case did not seek to dismiss the indictment on the constitutional ground now raised, nor did he seek to preserve his right to a direct appeal on that ground.  Instead, he fully accepted that the charges against him were properly laid and that he is guilty.

As noted by the First Circuit in *U.S. v. Teeter*, 257 F.3d 14, 23 (1st Cir. 2001), "[p]resentence waivers of appellate rights have been accepted by all nine of the circuit courts which have passed upon their validity." [3]  Waivers of the right to appeal are routinely enforced if the agreement is clear and unambiguous.[4]  Certainly, in this case the waiver was unmistakable and Portway knowingly and voluntarily waived his rights.

## C.  Defendant Has Not Raised a Jurisdictional Claim

Perhaps because a true claim that the court lacked jurisdiction is never waived, defendant appears to suggest, but does not elaborate, that he is challenging the jurisdiction of the district

---

[3] *See, e.g.*, *U.S. v. Hernandez*, 242 F.3d 110, 113 (2d Cir.2001); *U.S. v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *U.S. v. Cuevas-Andrade*, 232 F.3d 440, 446 (5th Cir. 2000); *U.S. v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001); *U.S. v. Jemison*, 237 F.3d 911, 917 (7th Cir.2001); *U.S. v. Michelsen*, 141 F.3d 867, 871 (8th Cir. 1998); *U.S. v. Nguyen*, 235 F.3d 1179, 1182 (9th Cir.2000); *U.S. v. Black*, 201 F.3d 1296, 1300 (10th Cir. 2000); *U.S. v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).  Waivers of § 2255 collateral attacks have also been enforced by district court judges in the District of Massachusetts.  *See e.g.*, *U.S. v. Boyd*, 05-cr-10037-GAO, 2014 WL 4794376 (D. Mass. Sept. 24, 2014) (O'Toole, J.); *U.S.  v. Ortiz*, 888 F. Supp. 2d 194, 197 (D. Mass. 2012) (Ponsor, J); *Oung v. U.S.*, 05-cr-10262-PBS, 2010 WL 2037379, at *3 (D. Mass. May 18, 2010) (Saris, J.).

[4] Notably, defendant does not claim that he did not understand the plea agreement or that he did not intend to waive his appellate rights.  *See generally U.S. v. Pratt*, 533 F.3d 34, 37 (1st Cir. 2008).

court.[5]  That claim has neither legs nor wings.  In essence, so long as defendant was charged with a federal criminal statute, the district court had jurisdiction.  At a minimum, it had jurisdiction to determine if the statute was constitutional.

The Supreme Court in *U.S. v. Cotton*, 535 U.S. 625, 630 (2002), held that "jurisdiction" means "the courts' statutory or constitutional *power* to adjudicate the case."  Similarly, the First Circuit held in *U.S. v. Gonzalez*, 311 F.3d 442 (1st Cir. 2002), that a challenge to subject matter jurisdiction is when the defendant says "the subject matter of the case falls outside the category of cases the court is authorized to try."  It does not mean that if a statute is found unconstitutional, the court is without jurisdiction over the case.

Under Article III, federal courts have subject matter jurisdiction over all cases arising under the laws of the United States. *Id.* This constitutional principle was codified in 18 U.S.C. § 3231, which states that federal courts have subject-matter jurisdiction over federal criminal prosecutions, thus vesting the district courts with the power to hear "all offenses against the laws of the United States." *U.S. v. Yousef*, 750 F.3d 254, 258-59 (2d Cir.) *cert. denied,* 135 S. Ct. 248 (2014).  As noted by the Supreme Court in *U.S. v. Williams*, 341 U.S. 58 (1951), section 3231 confers "jurisdiction of the subject matter." Accordingly, a "federal criminal case is within the subject matter jurisdiction of the district court, if the indictment charges that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes." *Id.* The Second Circuit in *Yousef* held that 18 U.S.C. § 3231 is all that is necessary to establish a court's power to hear a case involving a federal offense in the criminal context, "whether or not

---

[5] *See, e.g., Hayle v. U.S.*, 815 F.2d 879, 881 (2d Cir. 1987) ("It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction").

the conduct proves beyond the scope of Congress' concern or authority in enacting the statute at issue." It does not establish a jurisdictional claim to allege that Congress lacked authority to enact a particular statute. *Id.* Therefore, an indictment which references a criminal offense confers subject-matter jurisdiction on the district court, where the court has the power to oversee the prosecution even if the allegations are defective in some way. *Yousef*, 750 F.3d at 260; *see also United States v. Lasaga,* 328 F.3d 61, 63 (2d Cir.2003).

Many circuits have specifically held that Commerce Clause attacks that call into question congressional authority are non-jurisdictional, and therefore waived by the defendant's guilty plea. *See U.S. v. Carr,* 271 F.3d 172, 178 (4th Cir.2001); *U.S. v. De La Garza*, 516 F.3d 1266 (11th Cir. 2008) (guilty plea waived defendant's right to challenge constitutionality of statute because claim was non-jurisdictional), *U.S. v. Riddle,* 249 F.3d 529, 535-36 (6th Cir.2001); *United States v. Beck,* 250 F.3d 1163, 1167 (8th Cir.2001); *United States v. Martin,* 147 F.3d 529, 531-32 (7th Cir.1998). The Second Circuit recently noted in *Yousef* that it denied as waived post-plea challenges to the constitutionality of a criminal statute based on the Commerce Clause, because "even post-plea appeals that call into question the government's authority to bring a prosecution or congressional authority to pass the statute in question are generally not "jurisdictional." *Yousef*, 750 F.3d at 260.

In this case, because the defendant was charged under the federal criminal statute 18 U.S.C. § 2252, subject matter jurisdiction existed. *Gonzalez*, 311 F.3d at 442.

## V. CONCLUSION

For all the foregoing reasons, defendant's motion should be denied.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

12

By:

_/s/ Thomas E. Kanwit_
THOMAS E. KANWIT
Assistant U.S. Attorney
J. Joseph Moakley Courthouse
1 Courthouse Way, Suite 901
Boston, MA 02210
(617) 748-3271


      Counsel certifies that this document was filed using the CM/ECF electronic document filing system of the District of Massachusetts on this date and that it is counsel's understanding that it will be served on counsel for defendant (if any) via that system; a copy will be served on defendant by placing it in the United States mail, postage prepaid, to Geoffrey Portway, Prisoner No. 94627-038,  P.O. Box 24550, United States Penitentiary, Tucson, AZ 85734.

_/s/ Thomas E. Kanwit_____
THOMAS E. KANWIT

February 11, 2015