Geoffrey Portway, # 94627-038
United States Penitentiary
P.O. Box 24550
Tucson, AZ 85734

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Geoffrey Portway,

Movant,

vs.

United States of America,

Respondent.

No. 12-cr-40064-TSH

MOVANT'S REPLY TO RESPONSE OF THE
UNITED STATES AND FOR THE COURT
TO TAKE JUDICIAL NOTICE

1.     On September 9, 2015, the United States ("Government") filed a response
to Movant's Request to the Clerk for entry of default, based on the Government's
failure to respond to Movant's Rules 59(e) and 60(b)(6), Fed.R.Civ.P., motion to
the Court to reconsider its May 20, 2015 Memorandum and Order denying him relief
on his 28 U.S.C. § 2255 collateral attack on the conviction in this case, based on
the Court's contention that Movant "has procedurally defaulted the argument that
the criminal statutes exceed Congressional authority," because such claim, inter
alia, "was not raised in both the district court and on direct appeal"..." (Memo.
at 3 (May 20, 2015)).

2.     What the Court has failed to notice is the fact that a motion for habeas
corpus relief, of which a motion under 28 U.S.C. § 2255 assuredly constitutes, may
not be dismissed, much less denied, if the claims raise substantial issues of con-
stitutional law that they are not incredible or unbelievable, when coupled with
authorites that substantiate the claims.

3.     Presuming that the Court knows the law, of which the Rules of the Court,
as set out in the Federal Rules of Civil Procedure are supposed to have the force

-1-

of law, Rule 12(a)(1)(B), Fed.R.Civ.P., permits Movant to reply to the Government's Response of September 9, 2015, within 21 days of such Response, and the courts will honor such right. This Court's jumping the gun, on September 11, 2015, just two days after the Government's Response is not only unfair but a denial of Movant's procedural due process rights imbedded in the Rules.

4.    Therefore, this instrument will point out to the Court the consequences of such denial of both Movant's opportunity to be heard as to the Government's failure to answer the assertions as to the lack of power, under the Constitution, to apply and enforce the criminal laws within the jurisdiction of the States, but also the consequences of the Court not reaching the merits thereon, as announced in the First Circuit, and the Court is asked to take judicial notice thereof and reconsider its position of denying this collateral motion, de novo, and to, sua sponte, rescind the denial order and reinstate this matter, and conduct the hearing the mandate of the provision, 28 U.S.C. § 2255, requires.

A.    The Plea Agreement Is Unenforceable On Principles Of Collateral Estoppel

5.    With the assertions in Movant's initial Memorandum In Support (Mov. Memo), that the criminal laws of the United States, "[I]n the absence of a properly passed constitutional amendment," U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 838 (1995)(Mov. Memo, ¶ 38, p. 12-13), permitting the enforcement of any of the federal criminal laws in a nationwide manner, including within the sovereign jurisdiction of the several States, such as the Eighteenth Amendment once allowed for federal enforcement by the Executive Branch, see, e.g., Granholm v. Heald, 544 U.S. 460 (2005)(discussing the necessity of an amendment of the Constitution to permit the enforcement of the prohibition of the "commerce" of intoxicating liquors for beverage purposes), the Dissenters expressed such requirement of an amendment thus:

"the moral condemnation of the use of alcohol as a beverage represented

not merely the convictions of our religious leaders, but the views of a
sufficiently large majority of the population to warrant the rare exercise
of the power to amend the Constitution. ... The Eighteenth Amendment en-
tirely prohibited commerce in "intoxicating liquors" for beverage purposes
throughout the United States ...."

Id., 544 U.S., at 494-95 (2005)(Stevens, J., with whom O'Connor, J. joins, dis-
senting)(emphasis added).

6.     With the claims already on record that Government is precluded from enact-

ing any commerce-nexus criminal law for nationwide applicability, much less the en-

forcement of them in a nationwide manner, the arrest of Movant, by the Executive

Branch of law enforcement officers; charging in an indictment of the commission of

the commerce-based offense that did not occur outside the jurisdiction of the State

of Massachusetts; the prosecution of the alleged criminal offense in a district

court of the United States, although having subject-matter jurisdiction under 18

U.S.C. § 3231, that lacked personal jurisdiction over Movant, where there is no

evidence of him having waived this Court's lack of such personal jurisdiction over

his person; conviction of the offense the Government had no authority to enforce

within the State  of Massachusetts, the Commerce Clause notwithstanding, as Justice

Thomas clearly announced in his concurring opinion in United States v. Lopez, 514

U.S. 549 (1995); and renders the convictions herein null and void, and the relief

sought in this habeas corpus cause of action cannot be denied, where the Supreme

Court has admonished:

       ""[t]he course of decisions of this Court ... make plain that restraints
       contrary to our fundamental law, the Constitution, may be challenged on fed-
       eral habeas even though imposed pursuant to the conviction of a federal
       court of competent jurisdiction." We have given the same recognition to
       constitutional claims in § 2255 proceedings."

Kaufman v. United States, 394 U.S. 217, 222 (1969)(citations omitted).

7.     Therefore, a plea agreement, applying contract law jurisprudence prin-

ciples, cannot be enforced when it is shown the Government, as in this case, is, in

-3-

essence, incompetent to even offer such a nonenforceable contract, such as a plea agreement, that forecloses a defendant from seeking an appeal or collateral motion to attack an invalid, null and void conviction rendered by a court that is shown to lack jurisdiction over the person appearing before said court, and provides an aggrieved party the use of collateral estoppel to remove such barrier, and permit the collateral attack to proceed unimpeded, and renders this Court's denial of relief subject to remand for consideration of the claims this Court has left unresolved, and that the Government did not dispute the veracity of that establish Movant's entitlement to habeas corpus relief therefore.

8.    In such showing of estoppel principles, it has been recognized:

Generally, in order to make our a claim for equitable estoppel, a party must show that "(1) the party to be estopped made a 'definite misrepresentation of fact    to another person having reason to believe that the other [would] rely upon it; (2) the party seeking estoppel relied on the misrepresentation to its detriment; and (3) the 'reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.'"

Shafmaster v. United States, 707 F.3d 130, 136 (1st Cir. 2013)(citations omitted).

9.    The purpose of the availability of equitable estoppel was thusly expressed:

"In general, courts apply equitable estoppel "to prevent injustice when an individual detrimentally and predictably relies on the misrepresentation of another." ... The doctrine is used sparingly against the government, ... and a party seeking to equitably estop the government must show "at least . .. 'an affirmative misrepresentation or affirmative concealment of a material fact by the government,'"..."

United States v. Colon Lee Dee, 772 F.3d 21, ¶ 16 (1st Cir. 2014)(citations omitted).

10.    In this case, the "affirmative misrepresentation or affirmative concealment" by the Government commenced when the federal agents presumed to have valid constitutional authority to enforce a commerce-based federal criminal law even within the State of Massachusetts, not within a federal enclave therein, when

-4-

the truth of the matter, when construing the Constitution and its limits on the
Federal Government strictly, as it must, prohibits such federal encroachment into
the sovereign territorial jurisdictional boundaries of the States in the absence
of consent of the States, as expressed by the people in an amendment of the Con-
stitution.

11.    Once an individual presents a substantial claim for equitable estop-
pel against the Government, in Heckler v. Cnty. Health Servs. of Crawford Cnty.,
Inc., 467 U.S. 51 (1984), quoted, in part, Colon Lee Dee, supra, the Court an-
nounced:

   "When the Government is unable to enforce the law because the conduct
   of its agents has given rise to an estoppel, the interest of the citi-
   zenry as a whole in obedience to the rule of law is undermined.   It is
   for this reason that it is well settled that the Government may not be
   estopped on the same terms as any other litigant.  Petitioner [the Govern-
   ment] urges us to expand this principle into a flat rule that estoppel
   may not in any circumstances run against the Government.  We have left
   this issue open in the past, and do so again today.  Though the arguments
   the Government advances for the rule are substantial, we are hesitant,
   when it is unnecessary to decide the case, to say that there are no cases
   in which the public interest in ensuring that the Government can enforce
   the law free from estoppel might be outweighed by the countervailing in-
   terests of citizens in some minimum standard of decency, honor, and re-
   liability in their dealings with the Government.  But however heavy the
   burden might be when an estoppel is asserted against the Government, the
   private party surely cannot prevail without at least demonstrating that
   the traditional elements of an estoppel are present."

Id., 465 U.S., at 60-61.

12.    Here, not only is the Government estopped from entering into any con-
tract, such as a plea agreement, where, as has been shown, it is incompetent to
enter into, much less offer such an agreement to a defendant the Court lacks per-
sonal jurisdiction over, it is estopped from even applying and enforcing its fed-
eral criminal laws anywhere but wherein it has sole and exclusive jurisdiction
over the area where the conduct is alleged to have been committed. A fact not in
evidence in this case at all, and the requirement that the Government establish,
ab initio, personal as well subject-matter jurisdiction is an imperative first

federal jurisprudence requirement before any court of the Union may sit in judgment over any case, civil or criminal. Cf., e.g., Sinochem Int'l v. Malaysia Int'l, 549 U.S. 422, 430-31 (2007)(discussing the requirement of establishing the district courts' subject-matter and personal jurisdiction before a "court can [] proceed at all in any cause"). See also Vermont ANR v. U.S. ex rel. Stevens, 529 U.S. 765, 779 (2000)(same).

13. In other words, as the First Circuit has observed:

""a prisoner can collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea.""

Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014)(citations omitted).

14. Learning, for the first time after his conviction, that the Federal Government is precluded, by the Constitution, from applying and enforcing its commerce-based criminal laws in a nationwide manner, within the territorial jurisdiction of any State, in the absence of an amendment to so permit, as the Eighteenth Amendment did for "intoxicating liquors," the enforcement of the laws within Chapter 110 of Title 18 of the United States Code is confined to within such areas the Government enjoys exclusive legislative jurisdiction, as described in Article I, § 8, cl. 17, and nowhere else within the States.

15. To establish the claim of collateral estoppel against the Government, the Court of Appeals has provided:

' "To prevail on this kind of claim, a convicted defendant who asserts a right to rescind his guilty plea because of newly discovered government misconduct must make two showings: "First, he must show that some egregiously impermissible conduct ... antedated the entry of his plea." ... "Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.""

Wilkins, id., at 28 (citations omitted).

16. Boiling down to the element of "materiality," the Court reasoned:

"the petitioner "must show 'a reasonable probability that, but for

-6-

[the misconduct], he would not have pleaded guilty .... For this purpose, a reasonable probability means "probability sufficient to undermine confidence in a belief that the petitioner would have entered a plea.""

Id. (in relevant part)(citation omitted).

17. The Supreme Court elucidated:

"It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. In Brady v. Maryland, ... we stated the applicable standard:

"'[A] plea of guilty entered by one fully aware of the consequences, including the actual value of any commitments made to him by the court, prosecutor, or his counsel, must stand unless induced by threats ..., misrepresentation ..., or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business ....'"

Id., 467 U.S., at 508-09 (citations omitted).

18. A "misrepresentation" can assume many facets, such as the Government, by charging the defendant with a federal offense, and making him believe the Government is constitutionally empowered to do so, under the circumstances presented in this case, and compel a defendant to plead guilty without him realizing the Government is precluded from doing so, until he consults with others who are more learned in constitutional law than he is, in order to raise the claim in a collateral attack, for which the crux of a § 2255 motion was enacted to reach. See, e.g., Wilkins, supra (discussing the purpose of § 2255 to be used to reach constitutional and jurisdictional matters that may not be cognizable on direct appeal).

19. As the Circuit makes clear:

"Section 2255 ... provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack. ... The catch-all fourth category includes only assignments of error that reveal "fundamental defects" which, if uncorrected, will "result[] in a complete miscarriage of justice," or irregularities that are "inconsistent with the rudimentary demands of fair procedure." ... In other words, apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal "exceptional circumstances" that

-7-

make the need for redress evident."

David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)(citations omitted).

20.    Because this case presents issues and claims of first impression, but not necessarily incredible, when applying the rule of strict construction to the Constitution and the limits imposed on the Federal Government by it, there is no record for the Court of Appeals to review, and the Supreme Court, in such a situation, has expressed:

> "The facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal.  In such circumstances the use of the writ in the federal courts to test the constitutional validity of a conviction for crime is not restricted to those cases where the judgment of conviction is void for want of jurisdiction of the trial court [either subject-matter or personal] to render it.  It extends also to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights."

Waley v. Johnston, 316 U.S. 101, 104-05 (1942)(emphasis added).

21.    Thus, to show that the court was want of jurisdiction, and not learned until after conviction and sentence, and such a challenge is not on the record to be reviewed for on appeal, such claims constitute one of "those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused" to be convicted in a court of complete competent jurisdiction over his person, "and where the writ is the only effective means of preserving his rights." Id.

22.    And since this collateral attack presents more than mere "errors of law," and encompasses the withdrawal of a plea this Court was want of personal jurisdiction to even accept, the Circuit admonishes that

> "an evidentiary hearing ... to withdraw a guilty plea is "required when a defendant alleges facts which, if taken as true, would entitle him to relief." ... Specifically, a defendant is entitled to an evidentiary hearing unless the alleged [in the motion] are "'contradicted by the record or are inherently incredible and to the extent that they are merely

-8-

conclusions rather than statements of fact.'"...; see also Machibroda v. United States, 368 U.S. 487, 496, ... (1962)(remanding for evidentiary hearing on motion to vacate sentence and withdraw guilty plea under § 2255 where allegations in support of the motion, "while improbable, cannot at this juncture be said to be incredible.").'"

United States v. Pullido, 566 F.3d 52, 57 (1st Cir. 2009)(other citations omitted).

23.    In order to not waste the Circuit Court's time, and valuable judicial resources, the best recourse for this Court is to grant the evidentiary hearing this collateral attack more than warrants, under the circumstances of the claims presented, or, in the alternative, to grant the relief sought, where the Government has not disputed or denied any of the constitutional and jurisdictional issues raised in the initial memorandum in support of this motion for collateral relief.

B.    Remand Would Result On Appeal

24.    As the Circuit makes clear, it applies, as this Court should, the standards announced by the Supreme Court in deciding whether to grant an evidentiary hearing in a § 2255 proceeding, saying:

> "Inferior courts routinely have applied the Machibroda standard in determining the need for evidentiary hearings on section 2255 motions. Allegations that are so evanescent or bereft of detail that they cannot reasonably be investigated (and, thus, corroborated or disproved) do not warrant an evidentiary hearing."

David v. United States, 134 F.3d 470, 478 (1st Cir. 1998)(citations omitted).

25.    All of the claims asserted by Movant, as to the limits the Constitution places on the Federal Government, and the purpose for the Commerce Clause, and its implied preclusion for its reliance for criminal legislation, are not the type of claims that "cannot reasonably be investigated (and, thus, corroborated or disputed), David, id., or "vague, indefinite and conclusory," Dalli v. United States, 491 F.2d 758, 761 (2d. Cir. 1974), or are "only general allegations,"

Amos v. Minnesota, 849 F.2d 1070, 1072 (8th Cir. 1988)(both cases, supra, cited in David, id, at 478), should be used as an excuse to deny him the evidentiary hearing the Circuit Court will assuredly remand this case to this Court for the purpose of ordering this Court to so conduct the hearing it should have granted from the moment the motion was first submitted, and not prolong Movant's unlawful depriva- tion of his liberty, demonstrated to be custody in violation of the Constitution of the United States. This is so because, as was implied in Pullido, the standard in Machibroda requires first to consider the "motion" itself, then the files and re- cord of the case, and the motion for § 2255 relief in this case is more than rife with first impression claims that no court has yet to address such issues at all, and should not be ignored.

26.    Comparing a collateral attack under § 2254 by a state prisoner, and ap- plying the rationale to this case, where the Government raised the plea agreement "procedural" bar to relief in this case, the proposition

"that Broce stands for the black-letter rule that a defendant's guilty plea pretermits any subsequent collateral attack aimed at negating the resulting conviction[, t]hat formulation, however, reaches beyond the holding in Broce, which contemplated "exception to the rule barring at- tack on a guilty plea." ... The exception include guilty pleas such as discussed in Menna v. New York, 423 U.S. 61, 46 L.Ed.2d 195, 96 S.Ct. 241 (1975)(per curiam), that is, pleas entered in response to charges "which the State may not constitutionally prosecute." Id., at 62 n. 2.
...
"A guilty plea, however, does not bar a defendant from contending that the [Government] may not convict [him] no matter how validly his factual guilt is established." Id."

Jackson v. Coalter, 337 F.3d 74, 79-80 (1st Cir. 2003)(in relevant part)(emphasis added)(citations omitted).

27.    Paraphrasing a First Circuit opinion, "an evidentiary hearing sometimes serves the ends of justice," and that Court, more than likely, will "think that this is such a case," where "[t]he circumstances are exceptional; and the situation is complicated by the nuanced nature of the questions presented," Ramos-Martinez v.

v. United States, 638 F.3d 315, 325-26 (1st Cir. 2011)(in relevant part): the ex-
pressly enumerated limits the Constitution imposes on the Federal Government, and
the only purpose for inclusion of the Commerce Clause into the Constitution, and
demonstrates that the assertions raised by Movant in this cause of action demand
the granting of the relief sought, where the Circuit Court, as in Ramos-Martinez,
will be obliged to "vacate the judgment and remand to the district court" to ad-
dress the unresolved claims and issues, "with a view toward determing whether the
... petitioner is entitled to relief on the merits of his substantive claims."
Id., at 326.

28.    This case is far from being considered final for appeal purposes, on
the premise:

    "A matter is "adjudicated on the merits" if there is a "decision fi-
    nally resolving the parties' claims, with res judicata effect, that is
    based on the substance of the claim advanced, rather than on a proce-
    dural, or other, ground.""

Junta v. Thompson, 615 F.3d 67, 72 (1st Cir. 2010)(citations omitted, as has been
done by this Court in this case.

29.    The Court should take notice that while Movant was submitting the in-
struments filed as Docs. 89-91, on September 1, 2015, and went off in the mail the
following day, he had no knowledge of this Court's August 26, 2015 ELELTRONIC OR-
DER that was not received by Movant until the afternoon of September 2, 2015, thus
the two mailings crossed each in the mails, leaving Movant no choice but to submit
this instant document, providing a reply to the Government's Response, dated Sep-
tember 9, 2015, to point out that there has been no "third bite at an apple," but
is merely an expoundment on what is already on the record of this collateral attack,
and to point out the fact that the Government, with all the opportunites to do so,
has never disputed the veracity of the claims for relief presented.

30.    The fact that this Court denied the motion "on procedural grounds," and
the applicability of the collateral estoppel grounds present, will not be lost on
the Circuit Court, where Movant, on appeal, would "show both that "the soundness
of the procedural ruling is debatable, and ... [that] the [underlying] constitu-
tional claim[s] [are] colorable," In re Smith, 436 F.3d 9, 10 (1st Cir. 2006)(ci-
tations omitted)(some emphasis added), and the appeal would result in the Circuit
Court agreeing that Moavnt's "constitutional claim[s] do[] not appear utterly with-
out merit ... and an incorrect procedural barrier removed, [and] the matter then
being ramanded to give the district court first crack at the constitutional claim[s]."
Wyman v. United States, 62 Fed.Appx. 364, 366 (1st Cir. 2003)(citations omitted).

31.    Therefore, for the reasons and matters of law presented, the Court is
asked to rescind its denial of the collateral motion, and to hold the hearing this
case requires, or to order Movant's unconditional release from custody that is viola-
tive of the Constitution of the United States, FORTHWITH.

Dated: September 28th , 2015.

Respectfully submitted,

GEOFFREY PORTWAY, # 94527-038, Movant pro se
United States Penitentiary
P.O. Box 24550
Tucson, AZ 85734

## Certificate of Service

I hereby certify that of the foregoing REPLY was served, by first class mail,
on this 28th day of September, 2015, onThomas E. Kanwit, Assistant U.S. Attorney,
1 Courthouse Way, Ste. 901, Boston, MA 02210.

GEOFFREY PORTWAY, Pro se

-12-