UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES,**                  )
         **Plaintiff,**         )   **CIVIL ACTION**
                                    )   **NO.  4:12-40064-TSH**
         **v.**                 )
                                    )
**GEOFFREY PORTWAY,**               )
         **Defendant.**          )
_____ )

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE (Docket No. 112)**

**DECEMBER 1, 2020**

**HILLMAN, D.J.,**

Geoffrey Portway ("Mr. Portway" or "Defendant") pled guilty to solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373; distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  I sentenced him to 320 months of imprisonment followed by a life term of supervised release.  His projected release date is May 28, 2035.

On November 18, 2020, Mr. Portway filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582.  (Docket No. 112).  The Government has not filed a response in opposition.[1]  For the reasons set forth below, the motion is denied.

**Discussion**

---

[1] On November 25, 2020, the Government filed a motion requesting an extension of time to respond to the Defendant's *pro se* motion for compassionate release.  The Government's deadline to respond was November 27, 2020.  However, the Court is prepared to rule on the Defendant's motion without extending the Government's time to respond.

Section 3582(c) begins with the general principle that " a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant,[2] however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." *Id*. § 3582(c)(1)(A).

Upon consideration of the current and potential prospective impact of the pandemic together with an individualized assessment of relevant factors as they pertain to Mr. Portway, I find that he has not met the burden necessary to secure a compassionate release. These factors include: (1) that he suffers from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover; (2) the health, safety, and living conditions at the facility where the defendant is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of the defendant's remaining sentence.

As a threshold issue, Mr. Portway submitted a compassionate release request to the warden at FCI Petersburg Medium, and waited 30 days without a response. As he has exhausted his administrative remedies, I may reach the merits of his petition for compassionate release.

Mr. Portway is 47 years old, obese, and has been diagnosed with Type II diabetes and hypertension (high blood pressure). (Prison Medical Records, Docket No. 112 at 6, 10-11). He has served approximately 98 months of his 320-month sentence, and is currently assigned to FCI

---

[2] The Defendant must first exhaust his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i).

Petersburg Medium. Due to an outstanding detainer order against him, if Mr. Portway were released he would be immediately subject to deportation to the United Kingdom. He has also applied for a prison transfer to the United Kingdom under the International Treaty Transfer Program.

Mr. Portway reports that there have been "23 confirmed cases" and one inmate death at FCC Petersburg Medium since the latest outbreak in September 2020, and that as a result of the pandemic, the facility has ceased all operations and programs and largely confined inmates to their cells. (Docket No. 112 at 7). BOP records show that as of December 1, 2020, 5 inmates and 4 staff have tested positive for COVID-19, while 195 inmates have recovered from COVID-19.[3]

Reviewing Mr. Portway's medical records, his health appears fair, and he has not alleged any lack of medical care which has increased his susceptibility to COVID-19. (Docket No. 112-1 at 3-23). Indeed, since the onset of the pandemic he spends most of his time confined to a cell, and is thus more able to social distance than inmates in lower-security facilities with open, barracks-style housing. (*Id.* at 7-8). Diabetes and obesity are comorbidities that put Mr. Portway at an increased risk of severe illness should he contract COVID-19.[4] Hypertension might put him at an increased risk, but his age relative to individuals in their fifties or older does not elevate his risk.[5] Hypertension and diabetes are common chronic conditions, and Mr. Portway has not shown why his conditions are uniquely compelling among the prison population.

Section 3582 also requires me to consider the nature of Mr. Portway's offense and the length of his remaining sentence. He possessed and distributed thousands of images of child

---

[3] BOP, COVID-19 CASES, https://www.bop.gov/coronavirus/ (last accessed Dec. 1, 2020).
[4] CDC, COVID-19: PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited on Nov. 23, 2020).
[5] CDC, COVID-19: OLDER ADULTS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited on Nov. 23, 2020).

pornography, solicited others to help him kidnap, rape, murder, and cannibalize young children, and speculated with others about targeting children who were known to him, and with whom he was close.  To date, he has not served even a third of his sentence.  Furthermore, if I release him and he is deported to the United Kingdom, I have no way of ensuring that he will comply with the special conditions of supervised release that I imposed at his sentencing.  These conditions, which include registration as a sex offender and restricting or monitoring his access to computers and internet-capable devices, are designed to protect the public.

    The Defendant's motion is ***denied***.


**SO ORDERED.**

                                                                         */s/ TIMOTHY S. HILLMAN*
                                                                         **TIMOTHY S. HILLMAN**
                                                                           **DISTRICT JUDGE**